# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | : CHAPTER 11 |
| | : |
| CARRIAGE HOUSE CONDOMINIUMS L.P. | : |
| AND 23S23 CONSTRUCTION, INC. | : CASE NO. 09-12647SR |
| DEBTORS | : JOINTLY ADMINISTERED |

| | |
|---|---|
| MORRIS BLACK & SONS, INC. | : |
| PLAINTIFF | : |
| VS. | : |
| | : |
| 23S23 CONSTRUCTION, INC. | : |
| CARRIAGE HOUSE CONDOMINIUMS, L.P., ET AL | : |
| DEFENDANT(S) | : ADVS. NO. 09-111 |

| | |
|---|---|
| SUNLIGHT ELECTRICAL CONTRACTING CO, INC. | : |
| PLAINTIFF | : |
| VS. | : |
| | : |
| JOHN TURCHI, JR., ET AL | : |
| DEFENDANT | : ADVS. NO. 09-115 |

| | |
|---|---|
| NATIONAL GLASS AND METAL CO., INC. ET AL | : |
| PLAINTIFF | : |
| VS. | : |
| | : |
| AMALGAMATED BANK, ET AL | : |
| DEFENDANT | : ADVS. NO. 09-120 |

# OPINION

By: Stephen Raslavich, Chief United States Bankruptcy Judge.

*Introduction*

Before the Court are four motions:

Morris Black & Sons, Inc.'s Motion to Remand a Matter Previously Removed from State Court. **Adv. No. 09-111**

The Motion of Sunlight Electrical Contracting Co., Inc. to Strike the Debtors Notice of Removal. **Adv . No. 09-115**

The Motion of Hunter Roberts Construction Group (Hunter Roberts) to Strike the Debtors' Notice of Removal of Certain Litigation or, in the Alternative, for Abstention and Remand of that Proceeding. **Adv . No. 09-115**

Hunter Roberts' Motion for Abstention or Remand with regard to a different non-bankruptcy litigation.[1] **Adv. No. 09-120**

All of the motions are opposed by the Debtors.  Both sides have submitted briefs.  After a hearing held on May 28, 2009, the Court took the matters under advisement.  For the reasons which follow, the Motion will be disposed of as follows.

*Summary of Rulings*[2]

Adversary Proceeding No. **09-111**: Morris Black's Motion to Remand is denied.

Adversary Proceeding No. **09-115**: Both Sunlight Electrical's and Hunter Roberts' Motions to Strike are granted.  The Court finds that the Debtors' attempt to remove pending litigation from the District Court for the Eastern District of Pennsylvania to this Court is procedurally deficient.

---

[1]B.V.F. Construction Co., Inc., has filed a joinder to this Motion.

[2]As all of the rulings which follow bear on the fundamental question of case administration, the Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(A).

Adversary Proceeding No. **09-120**: Hunter Robert's Motion for Remand or Abstention as to the removed litigation is denied.

*Background*

The movants are parties to various prepetition lawsuits which were brought against the Debtors.  Their underlying claims arise out of a construction project located in Philadelphia.  Morris Black and Sunlight Electrical, plaintiffs in two of those suits, allege that they were tradesmen/subcontractors who were not paid for work performed. Hunter/Roberts, a third party defendant in two of the suits, was the general contractor on the job for some unspecified period of time before it was terminated by the Debtors. After the subcontractors sued the Debtors, they, in turn, sued Hunter Roberts.  Each of the pending lawsuits was removed to this Court after the bankruptcy cased were filed.

*Removal from District*
*to Bankruptcy Court*

The Court takes up first Hunter Roberts' and Sunlight Electrical's Motions to Strike (the Hunter/Sunlight Motions).  Both make the same threshold challenge to the removal of one of the suits.  They maintain that Adversary Proceeding No. 09-115 was improperly removed to this Court.  That proceeding, it is explained, was pending in the United States District Court for the Eastern District of Pennsylvania when the Debtors filed their Notice of Removal.  A case pending in a district court, it concludes, may not be removed to a bankruptcy court.  *See* Hunter Roberts' Brief, 5-7: Sunlight Electrical Motion, 4.

3

The Debtors argue that removal of pending litigation in the District Court to this Court is entirely appropriate. Their argument is one of expediency. They explain that since the 1984 amendment to the Bankruptcy Code, bankruptcy courts are considered "units" of the district courts. This explains why district courts customarily enter standing orders of reference of bankruptcy matters to bankruptcy courts. The Debtors' filing of their bankruptcy case when the construction litigation was pending in the district court, then, automatically referred (i.e., removed) that litigation to this bankruptcy court. *See* Debtors' Brief, 2-14.

The Court's analysis of this question begins with the relevant statute. Removal is governed by Chapter 89 of Title 28. Section 1452 is captioned "Removal of claims related to bankruptcy cases." It reads as follows:

> (a) *A party may remove* any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, *to the district court for the district where such civil action is pending*, if such district court has jurisdiction of such claim or cause of action under section 1334 of this Title.

28 U.S.C. § 1452(a) (emphasis added).[3] The parties disagree on the breadth of the words "district court." Hunter Roberts sees it as limited to the District Court *per se* to the exclusion of the Bankruptcy Court while the Debtors interpret the term to include

---

[3] Bankruptcy Rule 9027 sets forth the procedure for removal of a matter to the bankruptcy court. It begins with the filing of a "notice of removal … with the clerk for the district and division within which is located the state or federal court where the civil action is pending." B.R. 9027(a).

both courts.  The case law is likewise split on this question.  For those cases adopting

Hunter Roberts' position, *see Doyle v. Mellon Bank, N.A.*, 307 B.R. 462, 465 (E.D.Pa.

2004); *In re Cornell & Co.*, 203 B.R. 585, 586 (Bankr.E.D.Pa. 1997); *Centrust Savings

Bank v. Love*, 131 B.R. 64, 65-66 (S.D.Tex. 1991); *In re Thomas Steel Corp. v.

Bethlehem Rebar Indus., Inc.*, 101 B.R. 16, 19 ( Bankr.N.D.Ill. 1989); *In re

Interpictures, Inc.*, 86 B.R. 24, 28-29 (Bankr.E.D.N.Y.1989); *In re Mitchell*, 206 B.R.

204, 209 (Bankr.C.D.Cal.1997); *Sharp Electronics v. Deutsche Financial Services Corp.*,

222 B.R. 259, 263 (Bankr.D.Md. 1998); *HCFS Business Equip. Corp. v. LDI Financial

Services Corp.*, 129 B.R. 157, 158 (N.D.Ill. 1991); *Helena Chemical Co. v. Manley*, 47

B.R. 72, 74-75 (Bankr.N.D.Miss.1985); *In re Croley*, 121 B.R. 412, 413

(Bankr.D.D.C.1990); *In re the Academy, Inc.*, 288 B.R. 286, 290 (Bankr.M.D.Fla.2002).

For cases in line with the Debtors' position, *see In re Philadelphia Gold Corp.*, 56 B.R.

87, 89-90 (Bankr.E.D.Pa. 1985)*; In re MATV-Cable Satellite, Inc., v. Phoenix Leasing,

Inc.*, 159 B.R. 56 (Bankr.S.D.Fla.1993); and *Raff v. Gordon*, 58 B.R. 988, 990 (E.D.Pa.

1985).[4]

The above survey belies Debtors' assertion that their position is the majority

view.  On the narrow question of whether removal of litigation from a federal district to

---

[4] The split has been recognized internally as well.  The Case Management Manual for
United States Bankruptcy Judges—prepared under the direction of the Subcommittee on Case
Management of the Committee on the Administration of the Bankruptcy System of the Judicial
Conference of the United States—discusses the issue at Ch. II, Sec. D.1, p.34 (1995)

bankruptcy court is allowed,[5] the cases tend to favor Hunter Roberts.  That is not to

say, however, that there do not exist logical arguments which support each side.

Indeed, there is some appeal to Debtors' reliance on the standing order of reference to

remove the case to Bankruptcy Court.  For example, the language of the standing order

in this District seems broad enough to encompass both main cases and related

adversary proceedings.  The standing order of bankruptcy administration for this

District[6] refers all cases as well as proceedings "arising in or related to" bankruptcy

cases to the bankruptcy court.  *See* E.D.Pa.Civ.Rule 1.1.1(d).  And as a matter of

efficiency, it would make sense to allow removal from a district to a bankruptcy court if

a matter would ultimately be referred to bankruptcy court anyway.

That argument, however, does not address other, more weighty concerns.  First,

as a matter of statutory construction, the plain language of § 1452(a) appears to limit

removal to district courts.  Second, the Debtors' view cannot be reconciled with the

clarification of bankruptcy court authority in the 1984 amendments.  A decision out of

---

[5] The bulk of the cases cited by Debtors involve litigation pending in state court which a party sought to remove directly to bankruptcy court.  Those cases did not involve a case already pending in federal district court removal of which was sought to bankruptcy court.  *See, e.g., In re A.G. Indus.*, 279 B.R. 534 (Bankr.S.D.Ohio 2002); *In re Eyecare of S. Callifornia v. Urrea (In re Eyecare of S. California)*, 258 B.R. 765 (Bankr.C.D.Cal. 2001); *In re Lone Star Indus. Inc. v. Liberty Mut. Ins.*, 131 B.R. 269 (D.Del. 1991); *Citicorp Savings of Ill. v. Chapman (In re Chapman)*, 132 B.R. 153 (Bankr.N.D.Ill. 1991); *In re Boyer*, 108 B.R. 19 (Bankr.N.D.N.Y. 1988); *Aztec Indus., Inc. v. Standard Oil Co. (In re Aztec Indus., Inc,)* 84 B.R. 464 (Bankr.N.D.Ohio 1987); *Gianakas v. Exch. Nat. Bank of Chicago (In re Gianakas)*, 56 B.R 747 (N.D.Ill. 1985); *In re Coastal Plains, Inc.*, 338 B.R. 703, 711 (Bankr.N.D.Tex.2006).  That, however, is not the issue here.

[6] Dated November 8, 1990

the Bankruptcy Court for the Northern District of Illinois explains why district to

bankruptcy court removal is not sanctioned:

> There are at least two reasons why this interpretation of
> Section 1452 cannot be accepted, in addition to the
> requirement that statutes be interpreted according to their
> plain meaning. *United States v. Ron Pair Enterprises, Inc.*,
> 489 U.S. 235, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290
> (1989). First, the *Philadelphia Gold* interpretation ignores
> the actual thrust of the 1984 amendments, which was to
> effect a quite substantive change in the relationship
> between district courts and bankruptcy courts. Regardless of
> the manner in which the reference power may have been
> expected to be exercised, the district courts were given the
> *power* to retain all bankruptcy cases and proceedings. By
> interpreting Section 1452 to allow for removal from a district
> court to a bankruptcy court, *Philadelphia Gold* creates a
> significant gap in that power: allowing litigants in any
> bankruptcy matter before the district court (presumably
> even one as to which the reference has been withdrawn) to
> remove the matter to bankruptcy court. Such a gap would
> severely undermine the Article III supervision that Congress
> intended as a remedy for the defects found by the Supreme
> Court in *Marathon*. Second, the *Philadelphia Gold*
> interpretation does not consider Section 1452(b). Yet if
> "district court" is interpreted to mean "bankruptcy court" for
> purposes of Section 1452(a), Section 1452(b) would result in
> the bankruptcy court "the court to which such claim or cause
> of action is removed") having unreviewable discretion to
> remand a claim or cause of action to the district court or not
> to remand. Such a power could raise even more serious
> Article III problems than those addressed in *Marathon,* since
> the decisions of the bankruptcy court in that case were at
> least appealable. *See Hillyard Farms v. White County Bank*,
> 52 B.R. 1015, 1019 (S.D.Ill.1985). Moreover an
> unreviewable power in bankruptcy courts to dispose of
> remand motions would contradict the Bankruptcy Rule
> enacted to effectuate Section 1452; Bankruptcy Rule
> 9027(e) provides that the bankruptcy court may only hear

> motions to remand if the district court does not otherwise
> order, and that the bankruptcy court may only make a
> report and recommendation to the district court, not a final
> decision.

*Thomas Steel, supra*, 101 B.R. at 19-20.  The Court finds this reasoning to be

persuasive.  It leaves up to the District Court the question of whether to refer the case

to bankruptcy court.  The alternative would impermissibly arrogate to the Bankruptcy

Court power which it would not appear to have.  The Hunter/Sunlight Motions to Strike

the Notice of Removal in Adversary Case No. 09-115 accordingly will be granted.

*Remaining Removed Claims*

The Court turns its attention next to those matters whose removal was properly

effected but whose adjudication, it is argued, ought to occur elsewhere.  Morris Black

and Hunter Roberts argue that abstention and remand principles militate in favor of

returning Adversary Proceedings 09-111 and 09-120 back to their state courts of

origination.

*Context*

Both motions involve a common nucleus of operative facts: the Debtors'

construction project and the litigation which it has spawned.  That construction project

is the conversion of a parking garage into condominiums in downtown Philadelphia.

Carriage House Condominiums LP is Delaware limited partnership whose bankruptcy

case qualifies as a "single asset real estate" Chapter 11 debtor.  *See* Voluntary Petition.

Its "single asset" is, of course, the condominium project.  The other Debtor, 23S23,

8

Inc., is the general contractor for the job and appears to be named after the street address (23 South 23rd Street in Philadelphia) of the project.  Both Debtors were the subject of the various lawsuits brought by subcontractors.  The Debtors, in turn, sued Hunter Roberts, a general contractor on the job, as a third party defendant.  What this means for present purposes is that the same facts and circumstances pertain to *both* movants' request to abstain and remand.  This allows the Court to undertake one analysis as to both motions.

*Bankruptcy Jurisdiction*

It is a truism that abstention first requires the existence of jurisdiction.  Under Title 28, the jurisdictional grant to hear bankruptcy matters is found in § 1334:

> (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

> (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

28 U.S.C. § 1334.  Under the 1984 Amendments to the Bankruptcy Code, the

> [b]ankruptcy judges may hear and determine all cases under title  and ll core proceedings arising under title 11, or arising in a case under title 11,rferred under subsection (a) of this

section, and may enter appopriate orders and judgments, subject to review under section 158 of this title.

28 U.S.C. § 157(b)(1) (emphasis added).[7]  A proceeding is classified as "core" under 28

U.S.C. § 157 "if it invokes a substantive right provided by title 11 or if it is a proceeding

that, by its nature, could arise only in the context of a bankruptcy case." *In re Marcus

Hook Development Park., Inc.,* 943 F.2d 261, 267 (3d Cir.1991) (quoting *Beard v.

Braunstein,* 914 F.2d 434, 444 (3d Cir.1990)).  Core proceedings represent those

disputes so intertwined with the bankruptcy process that Congress has the power under

---

[7] Core proceedings include, but are not limited to–

> (A) matters concerning the administration of the estate;
> (B) allowance or disallowance of claims against the estate or exemptions
> from property of the estate, and estimation of claims or interests for the
> purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but
> not the liquidation or estimation of contingent or unliquidated personal
> injury tort or wrongful death claims against the estate for purposes of
> distribution in a case under title 11;
> (C) counterclaims by the estate against persons filing claims against the
> estate;
> (D) orders in respect to obtaining credit;
> (E) orders to turn over property of the estate;
> (F) proceedings to determine, avoid, or recover preferences;
> (G) motions to terminate, annul, or modify the automatic stay;
> (H) proceedings to determine, avoid, or recover fraudulent conveyances;
> (I) determinations as to the dischargeability of particular debts;
> (J) objections to discharges;
> (K) determinations of the validity, extent, or priority of liens;
> (L) confirmations of plans;
> (M) orders approving the use or lease of property, including the use of
> cash collateral;
> (N) orders approving the sale of property other than property resulting
> from claims brought by the estate against persons who have not filed
> claims against the estate;
> (O) other proceedings affecting the liquidation of the assets of the estate
> or the adjustment of the debtor-creditor or the equity security holder
> relationship, except personal injury tort or wrongful death claims; and
> (P) recognition of foreign proceedings and other matters under chapter
> 15 of title 11.

28 U.S.C. § 157(b)(2).

Article I of the Constitution to direct a non-tenured judicial officer (i.e., bankruptcy judge) to render a final determination of their merits. *See* 1 *Norton Bankruptcy Law and Practice 3d,* § 4.65 (2009) ("The word 'core' was a shorthand word employed to signify issues and actions that traditionally formed part of the functions performed under federal bankruptcy law").

Where a matter does not qualify as "core" but has some meaningful nexus with the bankruptcy case, it may nevertheless be heard by the Bankruptcy Court on a preliminary basis:

> A bankruptcy judge may hear a proceeding *that is not a core proceeding* but that is *otherwise related* to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

28 U.S.C. § 157(c)(1)(emphasis added).[8] The Third Circuit has defined a "non-core" yet "otherwise related" proceeding as one whose:

> outcome ... could conceivably have any effect on the estate being administered in bankruptcy." *Pacor v. Higgins*, 743 F.2d 984,994 (3d Cir.1984) (emphasis omitted); *see In re Guild,* 72 F.3d at 1180-81. "[T]he proceeding need not necessarily be against the debtor or against the debtor's property." *In re Guild,* 72 F.3d at 1180-81. "' A key word in [this test] is conceivable. Certainty, or even likelihood, is not

---

[8] The statute does provide, however, that all parties may consent to the Bankruptcy Court's entry of a final judgment. *See* 28 U.S.C. § 157(c)(2)

> a requirement. Bankruptcy jurisdiction will exist so long as it
> is possible that a proceeding may impact on the debtor's
> rights, liabilities, options, or freedom of action or the
> handling and administration of the bankrupt estate. '" *Id.* at
> 1181 (quoting *In re Marcus Hook,* 943 F.2d at 264)
> (emphasis omitted).

*Halper v. Halper,* 164 F.3d 830, 837 (3d Cir.1999)(footnote omitted).  The Third

Circuit's most recent case dealing with the limits of bankruptcy court jurisdiction does

not alter this framework.  *See In re Exide Technologies*, 544 F.3d 196, 205-208 (3d

Cir.2008) (discussing limits of bankruptcy court jurisdiction).

The parties disagree as to what jurisdictional status these principles imbue the

state court litigation.  The Debtor asserts that those claims are "core" matters.  They

rely on § 157(b)(2)(B), *supra*, which includes among "core" matters "allowance or

disallowance of claims against the estate. . ." The broad definition of the term "claim"[9]

would logically include the state law causes of action.  Debtors' Motion, 3-7.

For its part, Hunter Roberts reads the jurisdictional grant more narrowly.  It

understands "claims against the estate" to refer to proofs of claim filed in the

---

[9] Defined as a:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated,
fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or
unsecured; or
(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to
payment, whether or not such right to an equitable remedy is reduced to judgment, fixed,
contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5)

12

bankruptcy case. Hunter Roberts has not filed a proof of claim but has, instead, promptly moved for remand. As a result, it concludes, the counterclaim is not a "claim against the estate" and so cannot involve a "core" bankruptcy issue. Hunter Roberts' Motion, ¶¶ 25-26.

The Court finds Hunter Roberts to have made the better argument. The claims allowance process is regarded as one of the most basic functions performed by bankruptcy courts, closely related to the entire bankruptcy distribution process. *In re Day*, 208 B.R. 358, 369-370 (Bankr.E.D.Pa.1997) Accordingly, the creditor who takes the affirmative step of filing a claim accepts certain consequences (e.g., waiver of the jury trial right). Hunter Roberts' has chosen not to file a proof of claim and has, instead, sought remand of its removed counterclaim. As it stands, its counterclaim (just like the Debtors' third-party claims against it, as well as the subcontractors claims against the Debtors) would exist independently under non-bankruptcy law. Thus, neither the Hunter Roberts' counterclaim nor the other causes of action of the subcontractors or the Debtors can be considered "core" proceedings.

That is not say, however, that there is not at least a limited jurisdictional nexus. A leading commentator points out that while "[a]n objection to a claim is a core proceeding ..., in another context, the litigation in question might be related." *See* 1 *Collier on Bankruptcy*, ¶ 3.02[3][a]. In the state court litigation, the subcontractors and tradesman on the project sued the Debtors for non-payment. Such causes will impact

13

the estate because, if allowed, they will diminish it.  The Debtors, in turn, have sought to shift liability to Hunter Roberts.  If the Debtors can demonstrate that Hunter Roberts is responsible, that, too, will affect the estate, but in a positive fashion.  Thus, the state court litigation involving Hunter Roberts may not be "core," but it is "related" to this bankruptcy.  *See In re Argus Group 1700, Inc.*, 206 B.R. 737, 748 n.17 (Bankr.E.D.Pa.1996) *citing Banlavoura-I, Inc. v. McCarthy, Gyemant & Babbits* (*In re M,G & B, Inc.),* 1996 WL 241703, at *1-*3 (N.D.Cal. May 2, 1996) (stating that purely state law cause of action which was originally filed by plaintiffs against debtor and other defendants in state court prior to debtor's bankruptcy, but was subsequently removed to bankruptcy court by debtor, constituted "at most, … a non-core proceeding 'related to' a title 11 case" since plaintiff had not filed proof of claim in debtor's bankruptcy case")  That is the extent of this Court's jurisdiction over the litigation removed under Adv. No. 09-120.

*Abstention and Remand*

Despite the competence of this Court to hear the subcontractors' claims, the movants would have the Court refrain from doing so.  Their motions ask the Court to abstain and to remand both litigations back to state court.  The discretion (or duty) to abstain is provided in the same section of Title 28 which grants jurisdiction:

> (1) Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing

14

a particular proceeding arising under title 11 or arising in or
related to a case under title 11.

(2) Upon timely motion of a party in a proceeding based
upon a State law claim or State law cause of action, related
to a case under title 11 but not arising under title 11 or
arising in a case under title 11, with respect to which an
action could not have been commenced in a court of the
United States absent jurisdiction under this section, the
district court shall abstain from hearing such proceeding if
an action is commenced, and can be timely adjudicated, in a
State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c).  The statute thus allows for what is referred to as permissive, or

discretionary, abstention (subsection (c)(1)) as well as mandatory abstention

(subsection (c)(2)).

Regardless of whether the decision to abstain is required or justified, the

removed matter may not simply be left in limbo.  The removal statute provides for

remand based on the equities:

The court to which such claim or cause of action is removed
may remand such claim or cause of action on any equitable
ground. An order entered under this subsection remanding a
claim or cause of action, or a decision to not remand, is not
reviewable by appeal or otherwise by the court of appeals
under section 158(d), 1291, or 1292 of this title or by the
Supreme Court of the United States under section 1254 of
this title.

28 U.S.C. § 1452(b).

*Order of Analysis*

What is not clear, however, is which measure of relief must be considered first

15

by the Court when both are alternatively sought.  Helpful in that regard is a recent

decision by Bankruptcy Judge Fox of this Court who has noted that:

> In applying these general considerations, courts have noted
> that principles of abstention found in 28 U.S.C. § 1334(c)
> should be included in the matrix of equitable factors that are
> relevant to a determination of a motion to remand under
> section 1452(b).

*Best v. Galloway, et al, (In re Best)*, Adv. No. 09-0048 (Memorandum Opinion), June

12, 2009, p. 11.  Accordingly, Judge Fox observed, the Third Circuit Court has

instructed that the issues surrounding abstention ought to be considered before the

more general principles of equitable remand."  *Id., citing Stoe v. Flaherty*, 436 F.3d

209, 215 (3d Cir. 2006).  This Court hews to that course.

*First Principles*

    "[I]t is the duty of a District Court to adjudicate a controversy properly before

it." *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188, 79 S.Ct. 1060, 1063,

3 L.Ed.2d 1163 (1959).  While that is not to say that a court may not under certain

circumstances refrain from hearing a case, the Supreme Court has made it clear that

abstention "is an extraordinary and narrow exception" to that duty.  *See United Servs.

Auto. Ass'n v. Muir*, 792 F.2d 356, 360 (3d Cir.1986) (quoting *Colorado River Water

Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d

483 (1976)), *cert. denied,* 479 U.S. 1031, 107 S.Ct. 875, 93 L.Ed.2d 830 (1987)

(explaining that abstention is the exception, and not the rule).  Indeed, it is justified

16

only in the exceptional circumstances where resort to state proceedings clearly serves

an important countervailing interest." *Muir, supra* at 360-361.

*Mandatory Abstention*

The Third Circuit has identified the following five circumstances which *require* a

district court to abstain from hearing a matter before it: (1) the proceeding is based on

a state law claim or cause of action; (2) the claim or cause of action is "related to" a

case under title 11, but does not "arise under" title 11 and does not "arise in" a case

under title 11, (3) federal courts would not have jurisdiction over the claim but for its

relation to a bankruptcy case; (4) an action "is commenced" in a state forum of

appropriate jurisdiction; and (5) the action can be "timely adjudicated" in a state forum

of appropriate jurisdiction. *See Stoe v. Flaherty, supra*, 436 F.3d at 213. Significantly,

these elements are stated in the conjunctive. *See, id.* The burden of proof rests with

the movants to show that abstention is required. *Id.* at 219, n.5.

Thus, *all* five of the elements must be established before a court may abstain

from hearing the removed case matters here. It does not require a great deal of

analysis to find that the first four elements are established: the causes of action are

based on state contract and construction law; the result of the cases would either

diminish or augment a bankruptcy estate and so are "related" to the pending

bankruptcy proceeding; without the bankruptcy filing this court would lack jurisdiction

to otherwise hear them; and the state courts of origination are competent to hear those

17

claims.

*Timely Adjudication*

That leaves the fifth element, which is where the movants' argument stalls. Hunter Roberts insists that the removed actions were on track for a "timely adjudication" until the Debtors commenced their bankruptcy cases.  See Transcript of Hearing, 5/28/09 (T-) 42.  The Third Circuit has explained that timeliness must be determined "with respect to needs of the title 11 case and not solely by reference to the relative alacrity with which the state and federal court can be expected to proceed." *See Stoe, supra*, 436 F.3d at 219.  The Court further stated that "the requirement of 'timely adjudication' in a state forum can serve to retain a significant number of cases in federal court." *Id.,* 436 F.3d at 215.  Courts discussing the timely adjudication element in this context have looked to the following factors: 1) backlog of the state court's calendar; 2) status of the bankruptcy proceeding; 3) complexity of issues; and 4) whether the state court proceeding would prolong the administration or liquidation of the estate.  *See Reunion Industries, Inc. v. Steel Partners II, L.P.*, 2008 WL 906535 *5 (W.D.Pa.); *accord In re Reliance Group Holdings, Inc.*, 273 B.R. 374, 397 (Bankr.E.D.Pa.2002).  The Court observes, then, that the notion of timeliness in this context is an expansive one.  As one commentator has explained, it is not strictly temporal:

> The fifth criterion is the most difficult to apply. Many courts
> have held that, for the section to be applicable, the cause of

18

> action must have been commenced prior to the filing of the
> petition commencing the title 11 case.   There is also the
> problem of what constitutes timely adjudication; is five years
> too long for timeliness of adjudication even if the bankruptcy
> case is likely to last that long?   Is six months too long in a
> fairly simple case in which the principal asset of the debtor is
> a debt owed to the debtor by a third party? The few cases
> considering the issue hold that timeliness must be
> referenced against the needs of the title 11 case, rather
> than against an absolute time guideline.

1 *Collier on Bankruptcy*, ¶ 3.05[2].  And what are those needs?  It goes without saying

that the Debtors have an interest in defending themselves in one forum: that is what

the automatic stay achieves.  For their own claims, it is certainly more efficient for them

to press their causes of action in one forum.  Again, from *Collier*:

> Because the allowance and disallowance of claims are core
> proceedings under 28 U.S.C. § 157(b)(2), and because
> entities owed money by the debtor generally file proofs of
> claim, there will not be too many instances in which section
> 1334(c)(2) will be applied to suits filed by third parties
> against the debtor. Failure to file a proof of claim will
> normally lead to nonparticipation by the creditor in the
> distribution from the estate. *For the most part, issues of
> interpretation and application of section 1334(c)(2) will arise
> in the context of suits brought by the debtor* before
> bankruptcy, or by the representative of the estate after
> bankruptcy, against third parties.

*Id.* (emphasis added)   Thus, the Debtors' interest in centralizing its claims must be

weighed against what the movants say is at stake: the progress already made in the

litigation and the issues of state law.  T-42; Hunter Roberts' Motion, ¶¶ 22, 31.

In reviewing the record on this point, the Court finds that Hunter Roberts has

19

overstated its case.  There is no competent evidence whatever in the record as to whether the state court is moving cases expeditiously or experiencing delay.  As to the characterization of the status of the litigation, the Court does not find it to be so far along as Hunter Roberts says.  It places too much reliance on the existence of scheduling orders in the state courts: such orders are not set in stone, but are issued to enable a court to manage its docket efficiently.  *See CTF Hotel Holdings, Inc. v. Marriott Intern., Inc.,* 381 F.3d 131, 142 (3d Cir.2004) (recognizing a court's inherent power to manage its cases).  In fact, they may be modified as circumstances require.  And indeed, those scheduling orders were amended by the Court of Common Pleas on a number of occasions.  *See* Hunter Roberts' Appendix at B-9, 15 and 20; C-6, 10; D-6, 7, 8.

The same is true with regard to the state of discovery prior to removal.  Hunter Roberts maintains that the parties have exchanged "thousands of pages of documents."  Hunter Roberts' Brief, ¶ 13.  It adds that it has filed two motions to compel discovery, answered three sets of interrogatories and responded to two documents requests.  *Id.,* ¶ 14.  But given that the scheduled depositions were stayed by the bankruptcy filing, the Court does not find the parties to be so far into that process as to consider a change of venue to be disruptive.  Indeed, although the pleadings may be closed, discovery could resume where it left off before the bankruptcies were filed.  There is simply not much substance to Hunter Roberts' argument.

20

Neither would this Court be ill-equipped to try the issues either.  Morris Black maintains that the issues are sophisticated and better left to the state court to sort them out.  Morris Black's Motion, ¶ 10  Hunter Roberts explains that the four consolidated pieces of litigation which were removed under Adversary Proceeding 09-120[10] were assigned to the Commerce Court of the Court of Common Pleas.  T-42  That Court, it is further explained, has expertise in such matters.  *Id.*  Of that, this Court has no doubt; however, this Court does not share movants characterization of the record or the legal theories as overly complex.  Rather, the Court sees it as fairly straightforward: the dispute is based on construction contracts and change orders to those contracts. There may be *many* change orders at issue in these cases, but just because a record may be voluminous does not mean that it is unwieldy or unmanageable.[11] Moreover, even if it may require, as Hunter Roberts suggests, some expert testimony on the issue of whether the work performed was satisfactory or substandard, the Court would not consider such evidence to be particularly esoteric.  In sum, the Court is confident that it can render an informed decision on the merits.

The Court contrasts this with the effect which remand might have on this

---

[10] National Glass & Metal Co. v. 23S23 Construction, Inc., November Term 2007 No. 2696; D'Andrea Bros. Concrete Co. v. 23S23 Construction, Inc., March Term 2007 No. 644; BVF Construction Co. v. Turchi, et al, October Term 2007 No. 2084; and 23S23 Construction , Inc. v. Hunter Roberts Construction Group LLC, May Term 2008 No. 367.

[11] Indeed, for the Court's convenience in ruling on its motions, Hunter Roberts delivered to chambers four neatly bound appendices containing those same contracts, change orders and other documents already attached as exhibits to its motion.

bankruptcy estate.   In the various state fora, the pending matters might very well

proceed at significantly varying schedules.   That might unduly delay administration of

this estate.   Hearing all of the various pieces of litigation against the Debtors in this

forum will more likely foster an expeditious resolution of claims *by and against* the

Debtors.   In sum, the movants have not carried their burden of showing that the state

courts of origination would adjudicate the pending claims any sooner than can be

accomplished here.   As such, they have not sustained their claim for mandatory

abstention.

*Discretionary Abstention*
*And Equitable Remand*

Alternatively, the movants have asked the Court to consider (1) whether it *ought*

to abstain from hearing the removed claims, and (2) whether it *ought* to remand them

from whence they came.   That argument is premised on the doctrines of permissive

abstention and equitable remand.   Both the decision to abstain or remand are within

the sound discretion of the Court.   *See in re Asousa Partnership*, 276 B.R. 55, 75

(Bank.E.D.Pa.2002); *In re Raymark Industries*, 238 B.R. 295, 299 (Bankr.E.D.Pa.1999).

*Common Elements*

The analyses for determining whether a court ought to abstain and whether the

equities support remand share a number of factors.   In *Best, supra*, Judge Fox

observed that a "consensus" position has emerged in this District as to the factors for

determining permissive abstention:

> (1) the effect on the efficient administration of the estate;
> (2) the extent to which state law issues predominate over
> bankruptcy issues; (3) the difficulty or unsettled nature of
> applicable state law; (4) the presence of a related
> proceeding commenced in state court or other non-
> bankruptcy court; (5) the jurisdictional basis, if any, other
> than 28 U.S.C. § 1334; (6) the degree of relatedness or
> remoteness of the proceeding to the main bankruptcy case;
> (7) the substance rather than the form of an asserted "core"
> proceeding; (8) the feasibility of severing state law claims
> from core bankruptcy matters to allow judgments to be
> entered in state court with enforcement left to the
> bankruptcy court; (9) the burden on the court's docket; (10)
> the likelihood that the commencement of the proceeding in
> bankruptcy court involves forum shopping by one of the
> parties; (11) the existence of a right to a jury trial; and (12)
> the presence of non-debtor parties.

*Best, supra*, at 17 quoting *Gilbert v. Ben Franklin Hotel Associates*, 1995 WL 598997 *1

(E.D.Pa.)  Five of those factors are to be considered in determining whether equitable

remand is warranted:

> the effect on the efficient administration of the bankruptcy
> estate; the extent to which issues of state law predominate;
> the difficulty or unsettled nature of applicable state law;
> comity; the degree of relatedness or remoteness of the
> proceeding to the main bankruptcy case; the existence of a
> right to a jury trial; and, prejudice to the involuntarily
> removed defendants.

*In re U.S. Physicians, Inc.*, 2001 WL 793271, *2 (E.D.Pa. July 12, 2001) (citing

*McCormick v. Kochar*, 1999 WL 1051776, at *2 (E.D.Pa. Nov.19, 1999).  *See also In re*

*RBGSC Inv. Corp.*, 253 B.R. 369, 377-78 (E.D.Pa.2000) *overruled on other grounds*, 544

F.3d 196 (3d Cir.2008)  At least one Court has applied the same seven factors listed

23

above to determine both discretionary abstention and equitable remand. *See Shared Network Users Groups, Inc. v. Worldcom Technologies, Inc.*, 309 B.R. 446, 451 (E.D.Pa.2004)  That the two doctrines follow a similar analysis comes as no surprise considering when they are raised in the procedural scheme: at the outset of the removal of the litigation to the federal court.  What this means for practical purposes is that the Court may undertake one analysis to determine whether both permissive abstention and equitable remand are warranted.

The most that can be said in support of the movants' request is that issues involve state law (breach of contract, unjust enrichment, state construction law) and that there are interests of federalism (i.e., comity) which might, without more, support remand.  The other factors, however, weigh against them.  It cannot be denied, for instance, that the removed litigations are integral to this bankruptcy: as the Court explained the condominium project *is* this bankruptcy case and the removed claims *each relate* to work performed on the project.  T-39.  As a result, the most efficient way for this *bankruptcy* case to proceed is to have the removed claims heard here.  T-51 Another commentator cogently explains what is at stake in that regard:

> Finally, a broad permissive bankruptcy abstention doctrine generally contradicts the bankruptcy goal favoring expeditious administration and resolution of bankruptcy cases because, more often than not, the fragmentation of bankruptcy jurisdiction among federal and state courts complicates and stalls the bankruptcy process. The bankruptcy goal of expeditiousness justifies abstention when a delegation of jurisdiction is the most efficient course of

24

> action, but these circumstances are exceptional; generally,
> efficient bankruptcy administration is fostered by resolution
> of all bankruptcy related litigation in a single bankruptcy forum.

Susan Block-Lieb, *Permissive Bankruptcy Abstention*, 76 Wash.U.L.Q. 781, 851 (Fall 1998)  There is no good reason to take that risk given that the legal theories and claims are, more or less, typical contract and construction law causes of action.  Adopting the movants' course could delay resolution of these bankruptcy cases for a long time.

The Court is likewise unpersuaded by Hunter Roberts' premise that efficient adjudication will occur elsewhere.  Once again, there is no evidence that the cases were so developed that removal would prejudice or even burden the parties.  Neither are the legal theories beyond this Court's ken.  Equally unpersuasive is Morris Black's concern over the existence of non-debtor parties.  It contends that Turchi, Inc. is necessary to adjudicate this claim, but that entity is not subject to this Court's jurisdiction.  Morris Black's Motion, ¶ 12.  What is not explained, however, is why Turchi, Inc. is necessary to this Court's adjudication of the Morris Black claim.  As the movant, Morris Black had the burden of proof on that issue[12] but has offered nothing.  As a result, its request for remand will be denied.

*Jury Trial*

An additional point raised by Hunter Roberts requires further analysis.   Hunter Roberts' has made a demand for a jury trial which, it maintains, militates in favor of

---

[12] *See Brizzolara v. Fisher Pen Co.*, 158 B.R. 761, 769 (Bankr.N.D.Ill.1993) (stating that movant has burden of proof on issue of permissive abstention and remand)

abstention.  It is true that a bankruptcy court may not conduct a jury trial in a non-core

matter[13]; however, a claimant in a bankruptcy forfeits the right to a jury trial. *See*

*Langenkamp v. Culp*, 498 U.S. 42, 44-45, 111 S.Ct. 330, 331, 112 L.Ed.2d 343 (1990)

(explaining that the filing of a Proof of Claim subjects the claimant to the equitable

jurisdiction of the bankruptcy court) The docket reflects that while Hunter Roberts has

not filed a Proof of Claim, it has filed a counterclaim against the Debtors in response to

being sued as a third-party defendant.  At least one Court has considered a

counterclaim to be effectively a claim against a debtor thereby waiving the jury trial

right.  *See In re RBGSC Inv. Corp.*, 240 B.R. 536, 543 (Bankr.E.D.Pa.1999) (deeming

counterclaim against debtor to constitute proof of claim).  But even if this Court were

not to accept that premise, it does not necessarily follow that a jury trial request

requires remand.  Hunter Roberts' theory implies that allowing the case to proceed here

risks duplication of effort.  The Court, however, does not find that result to be

axiomatic.  For one thing, withdrawal of the reference is not outside the realm of

possibility.[14]  For another, this Court could hear the matter through the pretrial stages,

subject to it then being tried by the District Court in front of a jury.  This is not an

uncommon occurrence.  In short, the Court does not find Hunter Roberts' jury trial

demand to dictate remand of the case.

---

[13] *See Beard v. Braunstein*, 914 F.2d 434, 442 (3d Cir.1990)

[14] Hunter Roberts intimated at the hearing that it might file a motion for withdrawal of
the reference.  T-52.

In sum, weighing all of the factors bearing on a decision to remand, the Court concludes that it would not be appropriate to grant such relief.

*Summary*

Based on the foregoing, the Motion of Morris Black to Remand Adversary Proceeding 09-111 will be denied.  Hunter Roberts' and Sunlight Electrical's Motions to Strike Adversary Proceeding No. 09-115 will be granted.  Hunter Roberts' Motion for Abstention and Remand in Adversary Proceeding No. 09-120 will be denied.

An appropriate Order follows.

By the Court:

Dated: <u>July 30, 2009</u>

_____

Stephen Raslavich
Chief U.S. Bankruptcy Judge

27